DECISION.
{¶ 1} Plaintiff-appellant Karen Burns sued defendant-appellee Beechmont Chevrolet, Inc. ("Beechmont"), claiming that Beechmont had violated R.C. 1345.01 et seq., the Ohio Consumer Sales Practices Act ("CSPA"), during her purchase of a 1997 Ford Mustang. Burns alleged that Beechmont employees had told her that she could finance the purchase of the Mustang for 6.29% over 60 months, but had instead deceived her into signing financing papers that contained a 15.09% interest rate for a 78-month term.
 {¶ 2} It is undisputed that, during the negotiation of the purchase price, Burns was adamant that she could only afford a $300 monthly payment. During her deposition, Burns testified that she had observed C.J. Stephens, a Beechmont salesperson, write down 6.2% on a piece of paper upon which he was scribbling figures in an attempt to come up with a monthly payment of $300. Burns's fiancé, Larry Lucas, who had accompanied her to the dealership, stated in his affidavit that "Stephens had promised [Burns] an interest rate of 6.2% over 60 months, which equated to a monthly payment around $300.00." But Stephens testified during his deposition that he had never discussed a 6.2% interest rate with Burns because he did not have the authority to do so.
 {¶ 3} Burns also testified that Stephen Payne, the finance manager, had twice represented to her that her loan was for 60 months at a 6.29% interest rate: once when Burns and Payne were in his office discussing the terms of the agreement, and once when Burns was signing the financing papers. Burns testified that before she signed each of the financing papers, Payne would explain what the document contained. When she signed the loan agreement, Burns testified, Payne told her that it contained the following terms: a 6.29% interest rate, a 60-month term, and monthly payments of $300. Burns testified that, as she signed each document, Payne would cover the document with other papers so that only the signature line was visible. But Burns also testified that she was not prevented from reading the papers. She said that she had not read the financing papers prior to signing them, nor did she ask to, because she had "trusted" Payne.
 {¶ 4} Beechmont moved for summary judgment, arguing that Burns had failed to produce any evidence to show that it had acted unfairly or deceptively in the consumer transaction. Eventually, the trial court granted summary in favor of Beechmont. Burns now appeals, bringing forth one assignment of error. In that assignment, Burns maintains that the trial court erred in entering summary judgment in favor of Beechmont. We disagree.
 {¶ 5} We review a grant of summary judgment de novo.[1]
Under Civ.R. 56(C), summary judgment is to be granted only when no genuine issue of material fact remains to be litigated; the moving party is entitled to judgment as a matter of law; and it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence viewed most strongly in favor of the nonmoving party, that conclusion is adverse to that party.[2] The party seeking summary judgment bears the initial burden of identifying the portions of the record that confirm the absence of any genuine issue of material fact.[3]
 {¶ 6} Initially, Burns notes that the trial court, in its decision, evaluated her claim under a standard of fraud instead of under the CSPA. We agree that the court did couch its decision in terms of fraud. In the decision, the court stated that the disclosure statement in the financing documents, which indicated that Burns had read and understood the agreement, coupled with Burns's admission that she had not read the closing documents, was "fatal to her fraud claim." Beechmont admits that the trial court should not have used this language but maintains that the entry of summary judgment was still appropriate because, as a matter of law, it could not have committed a deceptive or unfair sales practice when Burns had failed to read the sales agreement, which clearly set forth the terms she now contests. Beechmont maintains that the terms of the agreement, including the interest rate and the loan term, were clearly stated in the financing documents, and that Burns was not prevented from reading the documents before she signed them. Thus, Beechmont argues that Burns finds herself in her current situation not because it committed a deceptive or unfair sales practice, but because she failed to read the documents before she signed them.
 {¶ 7} We agree with Beechmont. The record demonstrates that the trial court reviewed a copy of the loan agreement before making its decision. Unfortunately, the loan agreement was not transmitted as part of the record on appeal.[4]
Accordingly, we must presume that the trial court correctly determined that the terms of the loan agreement were "clearly stated," and that "if [Burns had read them] she would have noticed the financing was for 78 months at 15.09%." Because Burns admitted that she was not prevented from reading the papers prior to signing them, there was no material fact in dispute. Because Burns had the opportunity to read the financing papers prior to signing them and because she chose not to, we hold as a matter of law that Beechmont did not commit any deceptive or unfair sales practices act.[5]
 {¶ 8} Since there was no deceptive or unfair sales practices act, and Burns chose not to read the loan agreement, she was bound by the terms of that agreement.[6] Here, the terms of the contract, according to the trial court, were clear and unambiguous. Burns has made no allegation of misrepresentations of fact outside the contract. She could have easily read the contract and discovered that the loan agreement was not as she intended. A person of sound mind cannot later claim that they were deceived into signing an agreement that was different than what they had intended, "when he could have known the truth by merely looking when he signed."[7]
 {¶ 9} Accordingly, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Winkler, P.J., concurs.
Painter, J., dissents.
[1] Doe v. Shaffer, 90 Ohio St.3d 388, 2000-Ohio-186,738 N.E.2d 1243.
[2] See State ex rel. Howard v. Ferreri (1994),70 Ohio St.3d 587, 589, 639 N.E.2d 1189.
[3] Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264.
[4] It is the duty of the appellant to include in the record a transcript of all evidence relevant to the trial court's findings and decision. See App.R. 9(B).
[5] See Hayes v. Osterman Jewelers, 7th Dist. No. L-01-1317, 2002-Ohio-1869, at ¶¶ 24-26.
[6] See Cossin v. Ron Rush Motor Sales (Sept. 25, 1986), 10th Dist. No. 86AP-182.
[7] ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 503,1998-Ohio-612, 692 N.E.2d 574, citing McAdams v. McAdams
(1909), 80 Ohio St. 232, 88 N.E. 542.